IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHARLES RISHEL, ) | |
| ) | CASE NO. 4:14-cv–1023 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Charles Rishel ("Rishel") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying his claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title(s) II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

### I. Procedural History

On November 5, 2012, Rishel filed an application for POD, DIB, and SSI alleging a disability onset date of January 15, 2010. (Tr. 11.) His application was denied both initially and upon reconsideration. Rishel timely requested an administrative hearing.

On January 30, 2014, an Administrative Law Judge ("ALJ") held a hearing during which Rishel, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 11.) On February 20, 2014, the ALJ found Rishel was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became final when the Appeals Council denied further review. (Tr. 21-23.)

### II. Evidence

*Personal and Vocational Evidence*

Age thirty-six (36) at the time of his administrative hearing, Rishel is a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563(c) & 416.963(c). (Tr. 21.) Rishel has a limited education and past relevant work as a car salesperson and fast food worker. (Tr. 21, 72-73.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Rishel was insured on his alleged disability onset date, January 15, 2010 and remained insured through December 31, 2012. (Tr. 13.) Therefore, in order to be entitled to POD and DIB, Rishel must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found Rishel established medically determinable, severe impairments, due to "mild degenerative disc disease and mild to moderate facet hypertrophic degenerative changes of the lumbar spine; tendinopathy and partial tear (external surface) in the right shoulder; obesity; and adjustment disorder with mixed anxiety and depressed features." (Tr. 13.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Rishel was found incapable of performing his past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work. (Tr. 15, 21.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Rishel was not disabled. (Tr. 21-22.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in

the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.");

*McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

### VI. Analysis

*Treating Physician*

In his first assignment of error, Rishel argues that the ALJ neither properly weighed nor provided good reasons for discounting the opinion of his treating physician, Timothy Wagner, D.O. (ECF No. 15 at 11-19.) The Commissioner does not appear to contest that Dr. Wagner qualifies as a treating source. Furthermore, the ALJ acknowledged that he was Rishel's "treating primary care physician." (Tr. 17.) Nonetheless, the Commissioner maintains that the ALJ reasonably ascribed Dr. Wagner's opinions no weight because they were unsupported by and inconsistent with objective treatment findings and medical tests; and, they were contradicted by the observations, conclusions, and treatment recommendations of specialists who evaluated Rishel. (ECF No. 17 at 11-14.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2]

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion

---

[2] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

"denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

On December 9, 2013, Dr. Wagner completed a medical source statement and a pain questionnaire. (Tr. 516-520.) Therein, Dr. Wagner found that Rishel's maximum continuous ability to stand or walk at one time was one hour, but noted he could stand for three hours total in an eight-hour workday. (Tr. 517.) Dr. Wagner further opined that Rishel's maximum continuous ability to sit was one hour, but noted that he could sit for a total of two hours. (Tr.

517-18.) When asked the basis of these opinions, including objective findings, Dr. Wagner indicated that it was based on experience and treatment of Rishel for 2.5 years. (Tr. 517-18.) Dr. Wagner also indicated that Rishel would need to rest by laying down or reclining for six hours in an eight-hour workday in order to relieve pain.[3] (Tr. 518.) Dr. Wagner further indicated that Rishel could occasionally lift one to five pounds and could rarely or never lift any greater weight. (Tr. 519.) Dr. Wagner stated that Rishel could rarely/never balance but could occasionally stoop. *Id*. Although Dr. Wagner checked a box indicating that Rishel's conditions had existed and persisted as indicated in the medical source statement since at least January of 2010, Dr. Wagner then indicated that Rishel's condition had existed as such since February 4, 2011. *Id*. Finally, Dr. Wagner indicated that Rishel would miss work more than three times a month due to his impairments or treatment thereof. *Id*. Dr. Wagner indicated that his assessment was based on the following diagnoses: 721.3 [lumbosacral spondylosis without myelopathy], 726.1 [rotator cuff syndrome of shoulder, and allied disorders], 715.9 [osteoarthrosis, unspecified whether generalized or localized], 724.2 [lumbago], 719.4 [joint pain], and 311 [depressive disorder, not elsewhere classified]. (Tr. 519.) Dr. Wagner indicated in the pain questionnaire that the first three diagnoses directly cause pain.[4] (Tr. 520.)

    In addressing Dr. Wagner's opinion, the decision states as follows:

> Dr. Wagoner [sic], the claimant's treating primary care physician, provided a medical source statement and opined that the claimant could stand no more than

---

[3] It is unclear to the Court how Rishel can stand/walk and sit for a combined total of five hours in an eight-hour day while requiring six hours of rest during the same period of time. The form itself noted that these three categories should add up to eight hours. (Tr. 518.)

[4] The Pain Questionnaire is exceedingly difficult to decipher. (Tr. 520.) Though some words are legible, others are not, rendering an accurate interpretation of material portions impossible.

> one hour; sit no longer that two hours; and stand no longer than three hours in an eight-hour workday. Dr. Wagoner also opined that the claimant could lift/carry no more than five pounds occasionally. (Exhibit 15F)
>
> This opinion is given no weight as the objective medical evidence of record provides no support to these very strong restrictions. The objective radiological studies do not show any findings that would support these conclusions. None of the specialists that Dr. Wagoner referred the claimant to reported such severe limitations.

(Tr. 17.)

Although the ALJ identified Dr. Wagner as Rishel's treating primary care physician, no good reasons for rejecting the physical limitations he assessed were given. Without any meaningful analysis or discussion, the ALJ offered three reasons for effectively rejecting Dr. Wagner's opinion: (1) it was unsupported by objective evidence; (2) the radiological studies do not support the limitations assessed; and (3) the specialists to whom Dr. Wagner referred Rishel did not report such severe limitations. (Tr. 17.)

The ALJ's first reason for rejecting Dr. Wagner's opinion, that there is "no support" for it in the "objective medical evidence of record" is a common but conclusory statement. Such broad statements, uncoupled from any meaningful discussion of the evidence, deprive this Court of the ability to conduct a meaningful review. The ALJ failed to reference specific facts or evidence in the record that were ostensibly inconsistent with Dr. Wagner's opinion, other than noting that x-rays, MRIs and CT scans revealed only "mild" or "moderate" degenerative changes. (Tr. 16, 19-20.) Accordingly, this Court cannot accept as "good reason" the ALJ's blanket assertion that Dr. Wagner's opinion was not well supported by the record as a whole.

The second basis for rejecting Dr. Wagner's opinions is largely the same as the first, except that this time the ALJ states that the objective radiological studies do not support the limitations

10

assessed. (Tr. 19.) Again, while other parts of the decision mention that x-rays and other tests showed only "mild" or "moderate" degenerative changes. The ALJ does not cite any medical opinions or experts supporting the medical judgment that the objective test results are incompatible with the limitations assessed by Dr. Wagner. The ALJ is not a medical expert. Without any medical expertise, it is unclear how the ALJ came to the conclusion that the objective radiological studies contradict or undermine the functional limitations Dr. Wagner ascribed to Rishel. It is well-established that an ALJ may not substitute his personal interpretation of the evidence for those of medical professionals. *See, e.g., Meece v. Barnhart*, 192 Fed. App'x. 456, 465 (6th Cir. 2006) ("[T]he ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.") (*citing McCain v. Dir., Office of Workers' Comp. Programs*, 58 Fed. App'x 184, 193 (6th Cir. 2003) (citation omitted); *Pietrunti v. Director, Office of Workers' Comp. Programs, United States DOL*, 119 F.3d 1035, 1044 (2nd Cir. 1997); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including [ALJs] of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.")); *accord Winning v. Comm'r of Soc. Sec.*, 661 F. Supp.2d 807, 823-24 (N.D. Ohio 2009) ("Although the ALJ is charged with making credibility determinations, an ALJ 'does not have the expertise to make medical judgments.'"); *Stallworth v. Astrue*, 2009 U.S. Dist. LEXIS 131119, 2009 WL 2271336 at *9 (S.D. Ohio, Feb. 10, 2009) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record.") (*quoting Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)).

Finally, the ALJ stated that none of the specialists to whom Dr. Wagner referred Rishel

echoed such severe limitations. (Tr. 19.) Presumably, the ALJ is referring to Sean T. McGrath, M.D., a rehabilitation specialist who examined Rishel on January 10, 2011 and administered a facet joint steroid injection (Tr. 316-319), and Douglas H. Musser, D.O., who saw Rishel on July 14, 2011. (Tr. 327-328.) The ALJ, however, does not point to any contradiction between the specialists' opinions and Dr. Wagner's medical source statement. Rishel argues that "[i]t is unreasonable to expect a similar functional analysis [as performed by Dr. Wagner] in ordinary progress notes such as the ones kept by Drs. Mussar and McGrath." (ECF No. 15 at 16.) This Court agrees. Neither Dr. McGrath nor Dr. Musser offered any opinion as to Rishel's functional limitations. Failure to do so cannot reasonably be viewed as a contradiction, as neither the ALJ nor this Court has any way of knowing what limitations those doctors would have assessed had they also completed medical source statements. In addition, there is nothing in the ALJ's recitation of their examinations of Rishel that obviously conflicts with Dr. Wagner's assessment. Even if some conflict could be gleaned between Dr. Wagner's opinions and the opinions of the specialists, it is not altogether clear that the specialists would qualify as treating sources.[5] Moreover, to the extent the ALJ perceived material inconsistencies between Dr. Wagner's opinion and those of the specialists, the ALJ's discussion of the examinations by the latter fail to highlight them. The Court, therefore, is unable to trace the path of the ALJ's reasoning.[6]

---

[5] Neither parties' brief nor the ALJ's decision make any reference to additional visits by Rishel to Dr. McGrath or Dr. Musser. As such, it appears Rishel only saw each physician once and one visit does not establish a treating relationship. *See, e.g., Witnik v. Colvin*, 2015 U.S. Dist. LEXIS 19450 at *12-15 (N.D. Ohio, Feb. 18, 2015).

[6] To the extent the Commissioner's brief attempts to highlight alleged inconsistencies that the ALJ did not, or to give additional explanations for the ALJ's decision to discredit Dr. Wagner, such arguments constitute *post hoc* rationale that this Court cannot rely on to supplement the reasoning set forth in the ALJ's decision. *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS

The Court finds that the ALJ erred by not giving good reasons for rejecting the limitations assessed by Rishel's treating physician, Dr. Wagner. Though the Court concedes there are some inconsistencies in Dr. Wagner's opinion, the ALJ did not discuss those inconsistencies and this Court's review is limited to the reasons given by the ALJ. Rishel's remaining assignment of error is rendered moot and will not be addressed in the interests of judicial economy.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: April 7, 2015

---

83635, *27-28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n. 1, 121 S.Ct. 1861, 149 L.Ed.2d 939, (2001)); *Johnson v. Sec'y of Health & Human Serv.*, 794 F.2d 1106, 1113 (6th Cir. 1986) (rejecting Defendant's *post hoc* rationale that obesity is *per se* remediable where there was no factual basis or findings of fact in the record to support such an argument).